MGFB Properties, Inc. vs. 495 Production Holdings, LLC, et al. Good morning, Your Honors. I'm Bill Cash. I represent the appellant's MGFB Properties and I'll refer to us as the Floribama Establishment. May it please the Court. The District Court erred in two intersecting ways. One, the District Court inappropriately applied the summary judgment standard, acting as a finder of fact on several issues that were disputed. Those issues should have gone to the jury. That issue intersected with the District Court's other error. The District Court's selection, the District Court's finding that the defendants did not have any ill intent in appropriating our mark, led the District Court to adopt a heightened... We have some... ...uncrafted test. But, Counsel, we have some predicate things to decide before we get there, right? I mean, so part of what we have to do is to decide what the appropriate test is. You're sort of going to the end, which is, if we apply the likelihood test and if we apply it like we normally would for a regular case, which you think we should, then the District Court didn't apply things appropriately. But before we get there, we have to decide what kind of case this is, whether footnote 5 applies, all of those sorts of things. So let's talk about some of those issues, okay? Absolutely. So our position is that footnote 5 does apply. It was part of the core holding of Rogers. This Court adopted Rogers in University of Alabama versus... Assume with me for the moment that the only thing that your client does is have a bar. That's it. Sure. Would footnote 5 apply under that hypothetical? No, it wouldn't matter. We would still be able to prevail on the Rogers... I get that. But would footnote 5 apply in the hypothetical I gave you? If we were still a bar and we were not a First Amendment business producing live music, producing books, producing concerts distributed by the fed, if we were solely a bar just selling alcohol and food, which is not our facts here, then yes, footnote 5 wouldn't apply. Okay. At what point does a commercial business, and your client clearly is a commercial business, right? At what point does a commercial business turn into a First Amendment expression entity of some sort? I think it's worth looking at the core business of this particular establishment. And the floor of the bar was a legendary place for live music. The real attraction to go to the floor of an establishment is live music. That's what separates it from all the other establishments. But the title, as I understand it, if we... Rogers is... What Rogers did, did a couple things sort of novel that everyone's accepted, including us, which is that the title to a work of art. How is Floor of Bama a title to a work of art? You may produce art, but how is Floor of Bama a title to a work of art? Floor of Bama is our brand for producing... It's a brand. You and I are on the same page. It is a brand. Coca-Cola is a brand. Pepsi-Cola is a brand. Nike is a brand. Those phrases, Coca-Cola, Pepsi, Nike, are not artistic expressions. They are a commercial brand, right? This is true, although Floor of Bama was used in the title of expressive works, particularly the Floor of Bama jam, the Kenny Chesney concert... Derivatively, as like if I wrote a song like, you know, Judge Luck likes Pepsi, then Pepsi would be in the nature of my song, but Pepsi wouldn't be an artistic expression of work. You would agree? I don't know that I would agree because of the holding that the title of a work is part of the expressive intent of the artist. Can I ask a predicate question, which is, correct me if I'm wrong, but I don't think we've ever adopted this footnote for this title to title exception. Have we ever adopted that? No. And so the Ninth Circuit, in a decision about Empire, said, you know, it doesn't even make sense to have this sort of exception because you can just go straight to the question of whether there's confusion of the source. What do you say about whether we should just even not adopt this and just follow the Ninth Circuit's Empire decision? I think that we should follow the Second Circuit's decision in adopting the footnote. Yeah. And that's just in the footnote in Rogers, it also comes out of the court case. I think the answer, not the answer, what I'd like for you to do is tell us why. Like, why would you want us to do that? Because I actually think there might be some reasons why one would want to do that, but I'm interested to hear what your thoughts are. You know, the policy that's trying to be vindicated in Rogers is to balance first-amendment rights to express an artist's legitimate artistic intent against the right of the public not to be confused or misled about the source of the work. And that's what animates Rogers. And although Rogers puts this in a footnote, the body of the Rogers opinion starts out saying we shouldn't, we don't want to have confusion among creative works. If you don't adopt the footnote, if you don't say that confusingly similar titles should be judged on the likelihood of confusion, then you get into an interesting case where a third infringer could come along later and make a similar title. The response from both Amiki, from your opposing counsel, and from the Ninth Circuit, I believe, is that the second element, the confusion element in Rogers' test, kind of takes care of all of this. So why do we need this separate carve-out? Because I'm not sure that I agree. The second element gets to a confusion about the source of the work. Isn't it explicit confusion? Isn't that essentially the test? As long as there is some that... An explicit confusion is defined as where the objective observer reading the title thinks the title is saying, I am from this. So, you know, if it were to say HBO's Game of Thrones, that tells you it's from HBO. So when the test talks about... What you're telling me is the test is really hard to meet, but not that it doesn't cover the same sorts of things. I think it's a little off course for where I wanted to go, but I think the Californication case is a good example. The Red Hot Chili Peppers have a song called Californication. A second TV network then came out with a show with the same title. And the court pointed out that if we don't judge confusingly similar titles in the same way, nothing stops a third person from also coming out and using the same name. Because the explicit confusion element doesn't get to the question of where the source of the work is. What was really at focus in that hypothetical is how am I supposed to distinguish between song A, TV show A, and TV show B? Can I go back to where I started? So assuming footnote 5 applies, assuming we would apply it, in determining what is title versus title cases, does it matter that the trademarking was not done as an artistic work, but that the trademarking was done for branding, and then it got incorporated later into some artistic works? That seems to be somewhat of a... In other words, there seems to be a big difference between a movie, Ginger and Fred, as trademarked as Ginger and Fred, versus Pepsi, which makes its way into a song that Pepsi wants to do for advertising purposes. I think the focus really should be on whether the mark has any distinctiveness. And the record was pretty uncontroverted here that Floribama has only been associated with our establishments. We had an incontestable trademark, which under the Knights of Malta case in this circuit stands for quite a lot. Viacom had the ability, in fact, to contest our trademark during the time they were developing the show. They knew about us. They had done our trademark search. They failed to contest us. We have a very strong mark. There's no doubt about that, but the question is, the mark is done, as I understand it, for package business, restaurant, live entertainment venue. And I think maybe mullet tossing as well. I think it is. I agree. That's why I said it. What is it? Mullet tossing. The fish. The fish. Know what you're saying? Not people with mullets, that's all. Title, title to title. That's definitely not an artistic endeavor. Can I ask you to address this question? So one concern I have about applying the title to title exception here is something that Judge Lux sort of hinted at, which is if we do that here, is there anything that prevents Coca-Cola, which has a huge museum close to here, from saying, well, look, our title is involved in artistic expression because we have a video that we show to all the people who come to our museum. And so that would stop, I would think, people from using the word Coca-Cola in a song or in a book or whatever. What do you say about that? I read that hypothetical, and I would say the distinction there is Coca-Cola's core business is not entertainment. It is clearly a food business. Entertainment is shifting it a little bit. Is it an artistic work? Paramount, which is an entertainment company, wouldn't be title versus title. It's the movies themselves they make that the title. So it can't be just entertainment business, right? That's correct. We don't need the confusingly similar titles to prevail. Because all we want on the Rogers test is whether there's artistic relevance between the work and the mark. And I think the critical thing here is that defense have acknowledged that when they use Floribama in the title Floribama Shore, they're not describing us. So when they use the mark, they're not making reference to us. That is different from other cases in the record, such as the Barbie girl. I want to explore your concert venue, because you acknowledged if you're just selling food and had a bar and all those things, you rely a lot on the fact that you have this concert venue. Is that not correct? If we're looking at the confusingly similar titles exception, Your Honor, yes. Yes, the title to title. Are you all in competition about this title to title business? Now, it's pretty well established. You play live music, right? Okay. And when you play live music at a venue like you and you play, let's say, a Beatles song or whosoever song you play, you have to get a license to play that song for BMI, ASCAP or somebody. You're aware of that, right? Yes. I mean, so when you're playing somebody else's song, which is mainly what you do, 99.9% of what you're playing at these concerts are songs you have no artistic interest in them, correct? Well, you can see the artistry. No, you have a license. You have to get a license. Every song I used to represent BMI, so we'd go around and say, you don't have a license, you're illegally playing the song, or ASCAP I did. Okay, so everything you're playing there, the so-called, it is a concert venue, okay. How many original songs are you playing there? I know the business is named Florida Bama, but I know you said you had one concert, you called it the Florida Bama Concert, is that right? The Florida Bama Jamma at which Kenny Chesney performed a song called... Okay, and was that one time or is it every year or that was a one-time big deal? That was held once. Okay, so we got that one-time big deal, you do this concert and you put the Florida Bama name in it. And then have you got any other songs that you own the trademark, the copyright, or any interest in that have Florida Bama in the title of the song? I don't think so. Okay, so you're not playing, you don't even own them and you're not playing those songs, because they don't exist, right? That would be correct. Okay, so to me there's a big gulf between, oh, we're a concert venue, we're playing all this music and doing all this stuff and so it's in our title for purposes of the footnote. See, I'm concerned that the footnote, whether, I don't know whether you should adopt it or not, we have it, should we, but to me this, and I'm just speaking for myself, this comes nowhere close to a title to title because you are not using it as a title, you're not using the name as a title to a song, to an event at the concert, or anything. So help me with all of that. How do you even come close to a title to title footnote exception? Your Honor, I would not say that the title to title exception is our strongest argument. Okay. And I think our strongest argument here was that the district court did not apply the summary judgment scenario correctly in that there was no evidence to show that there was an artistic relationship between their use of our mark and describing our name. This is not a case like where they needed our mark to describe our name because we're not part of the show. Judge Brasher's got one question, then we'll finish up. Yeah, I just wanted to follow up on that. I mean, I get that there are some courts that have said that that is the way this works, that, you know, the Barbie example that you gave, but I'm having a difficult time understanding why that should work that way. I go back to the Ninth Circuit's decision in Empire where the Ninth Circuit says, look, this is a common word. The fact that the TV show is not referring specifically to this other entity is kind of irrelevant for whether it's being used artistically. What do you say about that? I don't see our cases on all fours with the Rosa Parks case out of the Sixth Circuit. Yeah, I'm just thinking maybe that's not right, I guess, is my point. Maybe that Rosa Parks case is wrong. Maybe the idea, I mean, can you explain to me why it should be that artistic significance has to be judged by whether the artist is referring to the mark holder and not just whether it just has some artistic significance? Well, what the band did in Rosa Parks is essentially made a song that had nothing to do with her or the Civil Rights Movement, put her name and staple it onto their work to sell more copies. That was what George Holshue found in the Sixth Circuit in that particular case. But couldn't you also say, look, I'm a band. I made this song about being mistreated, and it doesn't have anything to do with Rosa Parks. It's just about me feeling mistreated, but I'm titling it Rosa Parks because that evokes something. That's part of my artistic expression. By titling it Rosa Parks, I, as the writer of this song, am sort of making this connection between my own mistreatment and her mistreatment. I mean, why wouldn't that be artistic? Let me say that this court's precedent in University v. Alabama and New Life. The painter in that case prevailed and got summary judgment thrown out on this defense because this court held that he needed to make reference. But we didn't say, the counsel, we didn't say that necessary was an element of it. It happened to be necessary there, and we said that was one reason why we were granting summary judgment. But I've read the opinion. At no point did we say it has to be necessary, a component, in order for it to have been artistic. In the same manner that the relevance doesn't have to be there. It's an element to consider, but it isn't a required element of that. I respectfully, I'm not sure I agree there. The court said that it wouldn't have been necessary to use the colors, use the trademark uniforms to depict those historical events. Just like it was necessary to refer to Fred and Ginger, where you had characters who were the Fred and Ginger of Italy. So the court has looked to whether the artist really has a need to use the mark. And in this case, they don't refer to the Floribama Package Lounge. They don't refer to the Floribama Yacht Club. They essentially would have called this show Disney Shore. Disney is also an entertainment business in Florida that's not in the show either. What was the difference between Disney Shore and Floribama Shore? They would have gotten sued. I have one last question on this point, which I'll just tell you this case law is difficult to square for me. It seems like it would be worse for the mark holder if the artist is specifically referencing the mark holder's mark. Does that make sense? So, I mean, if they were specifically saying, oh, we're calling this the Floribama Shore because we're specifically referencing, we're like stealing your mark and using it for our show. So I just... I understand where you're going. And it's interesting. It cuts both ways. In their briefs, they go out of their way to say, our show does not describe the bar and has nothing to do with the show. I say, had they done that, they would at least be more in the position of making, say, a commentary about the bar or a documentary about the bar or telling some kind of story, whether it's authorized or not. You're certainly allowed to make a documentary about the people who work here. You can say that terrible things happened at our bar and use our name. What you can't do is make a work that's not related to us whatsoever, take our good name we've established for 60 years and our incontestable trademark and just staple it onto your show because you were feeling it or because you felt that it screams louder than some other generic name. That's the issue. Thank you. Thank you. Good morning. May it please the court. My name is Susan Coleman. I'm here this morning with my colleague, Rami Jaffray of Jenner & Block, and we are representing ViacomCBS, now known as Paramount Global. This is not an ordinary consumer products trademark case. As your honors have pointed out, plans and claims target creative expression, which is protected by the First Amendment. I will say, though, drawing that line on when a title becomes an artistic work is fraught, and it gets us into places that even you and your amici can see that courts shouldn't necessarily be. So I'm wondering where that line is from when something is a title to an expressive work versus a commercial title. I think, actually, Your Honor, Roger said that the title of a movie in that case is an integral element of the filmmaking expression, and it, in fact, requires more protection than the labeling of products. I don't think you need to determine whether or not the title itself is an expressive work. And just to take a step back, Your Honor. Counsel, I understand all that. But they have cited in the record documentaries, other videos, at least one song where they license that has used the name, and that clearly fits within that definition. So, again, I go back to where do I draw that line from when something is a title to an expressive work that falls within Roger's and the title versus title exception and when it does not. Well, I don't think you need to get to title versus title here at all because I don't think there is any allegation whatsoever about whether or not there is a title, even if you grant them that there are a few works. And I will get to that. But if you grant them that there are some works that they have some connection to that have Floribama in the title, there is not a single allegation in the record that the confusion is about the title, MTV, Floribama Shore, with any title that they have a connection to. I know, but, Counsel, I don't think we have to get there. The question is simply whether to apply the footnote, as I understand it, is it a title to an expressive work that is also the title to expressive work of something that you have? And what I'm trying to get with you and trying to figure out for myself is where is that line when something becomes an expressive work? It's really easy. If I have a movie and I title a movie, that's clearly it, right? But then you have these other things that maybe don't start off as an expressive title but take on the life of some sort of expression. I'm sorry. And maybe I'm misunderstanding the question, so I want to be clear. Are you asking about whether or not their venue, as Judge Hill was asking, my colleague, is an expressive work? Or are you asking whether MTV, Floribama Shore is an expressive work? I'm asking. There's no doubt that your title is an expressive work. I'm asking about the line. I'm not asking about this specific case. Where is the line from when I decide when a title becomes a title to an artistic work? Because you've laid out the hypothetical that Judge Brasher has explicitly asked your opposing counsel about the Coca-Cola example. Coca-Cola can't operate as a regular company for 100 years, develop a song, and then say that that song with the title Coca-Cola is now a title of an expressive work. I understand that. But there's a line there, and I'm trying to explore when that line is. Because what they're saying is we have some songs here, and we have some videos, and we have things that are artistic, and some big ones, even, that have used the name in there, and so it has artistic value, that title. First of all, I'm not sure that I would agree with the premise that anything that they have had anything to do with is a title that they are connected to. But, again, I'm not sure you need to draw the line. Because I think if one were to apply the exception and whether or not this is title versus title, I think you need to look at the underlying activity of the artistic expression. And, again, I think it will answer itself. For example, take Twin Peaks. It was clearly whether or not there was going to be confusion about whether it was Twin Peaks, the TV show, or Twin Peaks, some book. Yeah, but the problem is that presupposes. Part of the confusion is part of the test. You're telling us to apply the test to determine whether it's title for title. I'm trying to ask you to define for me the line from when something crosses into expression. It's really easy if I write a book and title the book Robert's Book. That becomes an expressive work of art for my title. Those are easy. Ginger and Fred, those are easy. What seems to me a little harder is when something may not be expressive work, the second that it's trademarked, but that clearly turns into or could turn into or does turn into an expressive work. I think the law has been, and, again, I apologize if I'm not answering your question, but I think the trademark law is clear, that in order to have trademark rights in a title, which is kind of what they are suggesting, the trademark has to have secondary meaning, has to be famous. That certainly isn't the case here. The record's clear, and they haven't even appealed that Floribama's not famous in Florida. I would come back to really all they have here is that they are an entertainment establishment. I don't think there needs to be any concern about whether that entertainment establishment is getting close to a line of being an expressive work. Let's assume that we agree with Judge Luck that it is a difficult line to draw. Would that perhaps be one reason just to not follow footnote 5 and just reject the title versus title exception and just apply the Rogers test? I certainly think that the court should simply apply the Rogers test that it has articulated in the University of Alabama case. I think footnote 5 is dicta. I don't think, even if the court wanted to consider whether or not in this case it should assert something under footnote 5, this, for the reasons I was just speaking about, is not a title versus title case, and you do not even need to reach the issue, and there may come a day when you do, but you do not need to reach the issue to affirm the decision below. Counsel, I tend to think that is the better way to handle it, but I'm still struggling with this argument they make, which is we do have some expressive works that are attached to us, and I've not gotten a satisfactory answer from you on where you draw that line. I thought you were going to say the trademark application or what you trademark it as is the definitive factor. In other words, I get, and it would be easy to apply test, if a title of a movie is trademarked as a title of a movie, it's clearly an expressive work, and trademarking a bar, a mullet tossing contest, and an entertainment venue is, trademarked as that and operates as that for 40 or 50 years before it then starts to produce some things with its name on it. That seems to be a different kettle of fish, no pun intended. I'm going to argue that on this record there are no expressive works, Counsel, let's go to the University of Alabama case, because your opposing counsel is telling us that it imposes both a relevancy and a necessity requirement. Now, I have to say, as sort of a general matter, I tend to agree with at least where the tenor of Judge Brasher's questions were going about whether we should impose such things. But the question for us is, are we required to? So I'm looking at the relevant passage from University of Alabama. It's at pages 12, 78, 79. Tell me why those do not impose those as requirements, and if not requirements, elements that we have to consider in factor one of the Rogers test. I don't think that, I agree with your Honor's comment, which is I don't actually think University of Alabama speaks to the needs test at all. There is necessary relevance in parentheses. It's a little more than parentheses. Let me read to you the relevant sentence here. So in this case, this is the application start. It's at head note seven for those who still use such things. Quote, the depiction of the university's uniforms and the content of these items is artistically relevant to the expressive underlying works because the uniform colors and designs are needed for a realistic portrayal of famous scenes from Alabama football history. Well, I don't think, I don't view that language as creating any kind of needs test. Just to go back to Rogers for a second, Rogers rejected a needs test or the no alternative standard test, saying that it gives insufficient leeway for literary expression. It's unworkable because I think what it requires you as a court to do is to determine artistic merit, and I think there's a long history of that is not something that courts should be getting involved in. In the University of Alabama case, for example, just to, you know, it is not suggesting that the court should determine whether there should be less realism or more realism in the way in which those jerseys were depicted. What if those, you know, whether it should have been people without jerseys at all? Does the University of Alabama stand for the proposition that we at least need to consider those as factors in applying the first part of the Rogers test, even if they are not dispositive? No, I do not think you're required to consider those as factors. Here's a question I have about, so on the one hand, I'm not sure it makes a lot of sense to say that the only kind of artistic expression that is covered by Rogers is a reference to the trademark holder, but on the other hand, it's hard for me to figure out if we don't apply that test, what would not, what kind of title to an artistic work would not have some kind of artistic significance? I think that the courts... That's a better way of asking the question I asked earlier. I think the courts have said it is a very, very low bar. I think it's... Yeah, I mean, do you have like any hypothetical at all where you would say, look, here's a title to something that doesn't have artistic significance? I mean, I just can't think of one. I don't think there, you know, I can't, as I stand here today, Your Honor, no, I can't think of one, but I think that there is no question here in this case that the title is artistically relevant. I think just, you know, the court below found that essentially. And here, I mean, another reason why I think you could get there is it's Floribama. It is geographically descriptive. It is not a, there's no secondary meaning. There is, it is essentially describing what's going on. Can I ask you a question? Have they painted themselves in a box on that issue? In other words, part of their argument is we've got to view the record in the light most favorable to them and the likelihood of the confusion. And one of those facts is that you wanted to use our bar. You even called us for a reality show to use our bar. I'm not saying this is, I understand you dispute these facts. You called us for that. You even wanted to put a billboard out front advertising us. All these people confused us. You wanted to piggyback on our goodwill because you wanted to use us as the basis for this. Doesn't that work against them in the relevancy if it is a relevancy test? Because it would seem to me then that it absolutely was relevant why a show about partying on the beach in Florida would want to have the floor of Bama in its name. You know, I think maybe it does, Your Honor, but I don't even think you need to get there. I think it's clear under the way in which courts have looked at artistic relevance, which is very minimal, that it is artistically relevant. And I think the issues about whether it refers to the bar or not, frankly, are taken up with explicitly misleading evidence. Well, let me dive into that because I'm not so sure that's 100% right. So let's take the Rosa Parks case, the one they rely on. I sadly have looked at the lyrics of that case, and there is a reference to back of the bus. In other words, there clearly is a connection. I think the Sixth Circuit got it wrong, but I think it got it wrong for that reason. To me, it seems like there is clearly a connection between what the title was and what the content of the song was as relevant to who Rosa Parks was. Now, a very crude version of that, but at least some reference to it. And yet that was found to not be artistically relevant. So there's at least some threshold for where there is a connection and yet still found to be not relevant. Well, actually, I think that Rosa Parks isn't something the Court needs to consider here because I would say that the Sixth Circuit sent it back down, noting that the artistic relevancy was a question of fact. It's completely different than what the Court has presented with here. And so I don't think it impacts the analysis as to which test should apply. And I think it's a little bit of a red herring. So you can't think of a hypothetical where the title wouldn't be artistically relevant. I can't think of one. Let me just try. So what if you had just called this TV show The North Florida Shore? Would that be artistically relevant or would it not be? I mean, I don't know whether there are—it could be. I think there are a couple of things here that, again, I would point out, and I think the record is very clear on this. First of all, every time my client used Floribama, it was MTV Floribama Shore. This was the seventh show after the famous Jersey Shore show. It was artistically relevant because it was defining a subculture, young adults who were in the Florida, Alabama area. They considered Florida Shore. In that context, probably it was artistically relevant. Yeah, but I guess that's what's so odd. I mean, your test for artistically relevant is basically the artist had a reason for choosing the title. And if that's the test, I just can't—I mean, that just seems like that eliminates the first part of Rogers and just says it's always artistically relevant. Well, I think that, in fact, that is the way the courts have expressed the test. That's— Other than a circumstance like Rosa Parks, where there was a fact question about whether there is artistically relevant. But University of Alabama seems to connect it to—and, again, I don't—I tend to agree with you. It's not the—that's positive. It's not the floor, which we have to consider. But at least there, they applied it in the context of the painting. It was relevant to what was actually being painted. In other words, there is a strong connection between using the uniform of an Alabama football player and painting a scene of a famous Alabama football scene that you then want to sell and hang up in a museum. Well, here, I would argue there is a connection between this was an iteration of the Jersey Shore show with young adults playing in the Florida-Alabama geographic area. And they were defining that subculture. So I think it meets any test you would want to come up with. Thank you very much, Counsel. Thank you. I appreciate a chance to respond directly to that discussion because it is troubling that they can't think of a single example where the defendant can't win. Their whole argument on artistic relevance here either hinges on one or two things. They stole and copy our name, as the district judge expressly found, or the Florida-Alabama region is a real place in the world, which the district judge also found was not true. And there is a fact question here, much as there was a fact question in Rosa Parks, that should have been sent back that the district judge glossed over. There was a lot of evidence in this record that no one uses that name. The trial judge himself said Florida-Alabama is not a real place. Everybody calls this Lower Alabama, L.A. When you look at the definitions they have for the Florida-Alabama region, they're very narrow from Orange Beach to Pensacola or from Mississippi to the beaches of Tallahassee, which are beautiful, by the way, or from Texas all the way to Jacksonville. There is no Florida-Alabama. When they were sitting in the real L.A., Los Angeles— There is some survey evidence that suggests that at least some segment of their population did view it as a geographic area. And that creates the quintessential disputed fact because we have plenty of evidence on our side to say that that's not the case, that that's not a real region. There's nothing in this record that says we're sitting in Los Angeles. We need to make a show. Let's go down to Florida-Alabama and look for a location to set the show because Florida-Alabama isn't a real region. They went to the region, and they got the name Florida-Alabama. So you have a ton of evidence, and you want us to read it in your favor, as you should at summary judgment, that says they really were trying to steal from us. I mean, they wanted to do it at the bar. They wanted to put a thing there. They wanted people to be confused that this was associated with the bar. You even presented evidence that people thought that the castmates would be at the bar. Why does that not go directly to that it was artistically relevant to use that to associate with the bar? Now, that may hurt them on the second element, but on the first element, that would seem to defeat what you're trying to do. I think that's an interesting syllogism, except that that's not what they're claiming. They're not saying. I agree, but we have to view the evidence. It's a de novo review, and we have to view it in light that's favorable. So it is appropriate to indulge my syllogism. It is appropriate to look at whether they have adopted our mark and used our mark. I don't think it necessarily hurts us that by using our mark, it conjures up our name. I think it kind of proves our case. It may, for the second element, if we're in lodger's land, not the footnote. What it seems to me is it hurts you for the first element. It may help you and may be dispositive on the second element. I don't know yet, and we should talk about that. But it seems on the first element, though, that it would be artistically relevant, assuming that is the test. I don't think that we can say it's artistically relevant if they themselves are not out there saying, listen, we adopted this title because we wanted to conjure up the Floribama establishment. The reason they chose this title is because, as they said in their own emails, I'm feeling it. I know we have been to that bar. They wanted to take our name. They didn't want to make a show about our bar, and that's why they run from having the show be about us. They repeatedly say, we didn't make a show about your bar, because they don't want to claim artistic relevance. I don't think the evidence is the double-edged sword that you described. There is just copious fact evidence. In Appendix 2, there's a great chart that I think says it all. It's page FNF 2750. They're looking at where they want to set the show. On the left side, Panama City. On the right side, Floribama. It says here, Floribama Bar Legendary. These arrows point to Pensacola and Orange Beach. They don't point to Panama City. They're described as four separate areas. Where did they set the show? They didn't set it in their own definition of what Floribama is as a region. It's just more evidence that Floribama is a post-litigation justification for their adoption of our mark. So it's not artistically relevant. You can throw everything about confusingly similar titles away. You can forget about Footnote 5 if you want to. I understand it troubles all three of you, and I don't think it's our strongest argument. But I think our strongest argument is, this title is not artistically relevant. It fails the Rogers test, and there's good evidence that it's explicitly misleading. If we adopt the reasoning of Empire, of the Ninth Circuit, do you agree with me you would lose that argument? I don't. No, I don't. Why is that? I believe that if you followed the Rogers test, there's sufficient evidence here to defeat summary judgment. I know that, but the Ninth Circuit said, and I think Judge Brasher either quoted it or summarized it perfectly, which was they essentially said it could be either artistically relevant or not, but it's still an artistic title of the work and would still be entitled to First Amendment protection. That's essentially where the Ninth Circuit shook out. Well, the Ninth Circuit is the Hollywood Circuit, and you'd be following the maximalist position of my friends on the other side who cannot find a single limiting principle for this test. You'd still have the confusion aspect, even if we followed the Ninth Circuit, that you'd still have your point that by titling this the floor of Bama, they're confusing people as to the source of the work, and they're making people think that their TV show is somehow related to your bar, right? Even if we followed the Ninth Circuit? I suppose you would. Thank you, Counsel. All right. Thank you very much. We're going to call the fourth case.